35 So.2d 355

**ALABAMA POWER CO. v. BUCK.**

6 Div. 693.

Supreme Court of Alabama.

April 29, 1948.

Rehearing Denied May 20, 1948.

D. G. Ewing, of Birmingham, and F. F. Windham, of Tuscaloosa, for appellee.

STAKELY, Justice.

This is a suit brought by Murray Buck (appellee) against Alabama Power Com-

pany (appellant) to recover damages to his automobile alleged to have been received in a collision with one of the busses of the Alabama Power Company in the City of Tuscaloosa, Alabama. There was verdict and judgment for the plaintiff and hence this appeal.

The appellant seeks a reversal because (1) the court refused to grant its request for the affirmative charge on count 1 which is based on simple negligence, (2) the court refused to grant its request for the affirmative charge on count 2 which is based on wanton misconduct and (3) because of the action of the court in connection with its oral charge and in giving charge B requested by the plaintiff.

In determining the propriety of a general affirmative charge when requested by the defendant, the evidence favorable to the plaintiff must be accepted as true. New Morgan County Building & Loan Ass'n v. Plemmons, 210 Ala. 286, 98 So. 12; Southern Ry. Co. v. Randall, 212 Ala. 41, 101 So. 661. And even if there was a conflict in the testimony of the plaintiff given on his direct examination and that given by him on cross-examination, this fact would not warrant the court in disregarding the testimony of the plaintiff. The jury had the right to determine which statement it would believe. Alabama Power Co. v. Byars, 236 Ala. 79, 181 So. 270; Spurlock v. J. T. Knight & Son, 244 Ala. 364, 13 So.2d 396.

The testimony favorable to appellee was substantially as follows. On December 6, 1946, appellee was driving west along Fifteenth Street in the City of Tuscaloosa at about 10:30 or 11 P.M. and collided with appellant's bus near the intersection of First Avenue and Fifteenth Street. The accident happened just before entering First Avenue. Appellee was driving at about 20 miles an hour, blew his horn and started around the bus and was about two-thirds by the bus when the bus struck his right rear fender. After the bus hit the fender and the driver of the bus had seen that he had hit him, the bus driver started straightening the bus up and it carried appellee all the way across the avenue with about two more licks. The first impact was about 10 or 15 feet from the east line of First Avenue. Appellee's car was to the left of the center line of Fifteenth Street and he did not see the bus driver put out his hand. To the best knowledge of appellee the glass window was closed on the driver's side. It was a cold night. Appellee's car and the bus were running parallel and the bus had not started to make a turn when appellee started around the bus. Appellee did not see the stop lights on the rear end of the bus flash on. After the first impact appellee glanced in his rear view mirror and saw appellant's bus pulling away from his car and at that time he swayed his car to the left and from appellant's bus. The collision occurred as the bus was making a turn to the left. After the accident the car of appellee came to rest against a fire plug on the southwest corner of the intersection. The driver of appellant's bus stopped the bus about 30 yards west of the west line of First Avenue. Marks on the pavement from appellee's car began about 10 feet east of the intersection of Fifteenth Street and First Avenue and ran 30 or 40 feet in a westerly direction into and across First Avenue. There was testimony tending to show that the tire marks leading to the rear of appellee's car were drag marks and not skid marks. Skid marks result from putting on the brakes. Drag marks result when the car being struck is pushed or dragged. According to appellee he never put on his brakes.

Fifteenth Street runs east and west. It is 21 feet wide. First avenue which is 30 feet wide comes into Fifteenth Street at right angles from the south. First avenue does not extend beyond Fifteen Street on the north side.

According to the bus driver when the bus was 150 feet east of and approaching the intersection of First Avenue and Fifteenth Street, appellee's car was 50 to 75 yards behind the bus. Appellee's car was travelling near the middle of the highway and was making pretty good speed and was going faster than the bus. According to the bus driver when he was slowing down for the intersection to make the turn he could see appellee back of him about 40

feet. At this time the bus was about 50 feet from the intersection.

Citing Holman v. Brady, 241 Ala. 487, 3 So.2d 30, appellant insists that it was entitled to the affirmative charge on count 1, the count of simple negligence, by reason of appellee's violation of § 13(c), Title 36, Code of 1940, which is as follows: "(c) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highways unless permitted so to do by a traffic or police officer. Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

■ The fact that First Avenue does not run north past Fifteenth Street is immaterial as the term intersection as employed in the foregoing statute is defined as follows in § 1(r), Title 36, Code of 1940: "(r) 'Intersection'. The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway cross the other."

In Holman v. Brady, supra, examination of the original record shows the defendant requested the affirmative charge on the count charging simple negligence. The court denied this charge. We do not understand the opinion to hold that the charge should have been given as a matter of law, but rather that there was evidence tending to show contributory negligence, which we add made the question of contributory negligence a question for the jury. The court did hold that there was error in submitting to the jury the wanton count.

In the case at bar the testimony set out above shows that the bus driver turned to the left, without signalling his intention so to do, and 10 to 15 feet before the intersection was reached struck the plaintiff's car when it was on the left side of the street after it was two-thirds past the bus. In making the turn in this manner the bus driver violated § 16(a), Title 36, Code of 1940, which reads as follows:

"(a) Except as otherwise provided in this section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane of traffic nearest to the right hand side of the highway, and in turning shall keep as closely as practicable to the right hand curb or edge of the highway, and when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left.

"For the purpose of this section, the center of the intersection shall mean the meeting point of the medial lines of the highways intersecting one another."

The bus driver also violated § 17(a), Title 36, Code of 1940, as follows: "(a) The driver of any vehicle upon a highway before starting, stopping, backing or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement."

■ In order to bar recovery on the ground that plaintiff violated the statute, it is essential that such violation should have contributed to the injury as a proximate cause. Stovall v. Corey Highlands Land Co., 189 Ala. 576, 66 So. 577; Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471.

■ Under all the circumstances we think the matter of contributory negligence was a question for the jury, because it could be that the bus driver's conduct in cutting the corner and in failing to give the signal of his intention to make a left turn, one or both, were the proximate causes of the accident. Newman et al v. Lee, 222 Ala. 499, 133 So. 10.

Under the evidence as set forth the jury had the right to infer that the bus-driver knew of the presence of plaintiff

and his car behind the bus and yet he cut to his left without signal and violated the statute which requires that one go to the center of the intersection before making a left turn. The bus driver according to his own testimony was looking to the left to see what traffic was on First Avenue. First Avenue approached from the south. The jury could infer that he could not help but see the plaintiff's car when the greater part of it passed him on his left. Yet he turned to the left. The jury could infer that he well knew that he would run into the rear of plaintiff's car. In the case of Godfrey v. Vinson, 215 Ala. 166, 110. So. 13, 15, this court said:

"There is evidence that defendant was running his car at a speed of about 25 miles per hour at 11 o'clock at night without lights (Code, § 6264), on the left-hand side of the street (Code, § 6266), 'Cutting the corner,' turning into a street to the left without keeping to the right of the crossing (Code, § 6266). Any of these violations of law is negligence. Neither of them, standing alone, would be evidence of wantonness under all conditions, but they tend to show that disregard of the legal safeguards to human life which is rushing scores, even hundreds, to violent and untimely death. Under special conditions of danger, known to defendant, either may tend to support an inference of wantonness. Concurrent disregard of several legal duties has a cumulative effect. * * *

"Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on the disaster. Wantonness may, of course, a rise after discovery of actual peril by conscious failure to use preventive means at hand. The evidence of defendant was sharply at variance with that of plaintiff upon important issues of fact.

"The above synopsis is sufficient to indicate that, in view of details pointed out to the jury in the presence of the trial court and not before us, we cannot say there was error in refusal of the affirmative charge on the wanton count."

See also Daniel v. Motes, 228 Ala. 454, 153 So. 727.

█ We think that it was a question for the jury as to whether the bus driver was guilty of wanton misconduct. There was no error in refusing the affirmative charge in this regard.

Assignments 5, 6, 7, 8, 10 and 12 are predicated upon the court's orally charging the jury that wantonness or subsequent negligence was an issue that it should consider and defining subsequent negligence in such oral charge.

Assignment 13 is predicated upon the court's giving to the jury charge lettered B, requested by appellee, which is as follows, "B. The court charges the jury that no initial contributory negligence of plaintiff could be a defense to subsequent negligence or wanton conduct as charged in count one and in count two of the complaint as amended, respectively."

█ Counsel concede that the portions of the oral charge objected to and appellee's charge lettered B state correct principles of law but insist that they were incorrectly given as there was no evidence before the jury of any wanton conduct or subsequent negligence on the part of appellant. What we have said disposes of these contentions.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.