147 So.2d 858

Joseph Edward **EDGER**

v.

**KARL BRADLEY FORD, INC.**

8 Div. 823.

Court of Appeals of Alabama.

Oct. 16, 1962.

Rehearing Denied Dec. 11, 1962.

Bell, Morring, Richardson & Cleary, Huntsville, for appellant.

Camp & Smith, Huntsville, for appellee.

PRICE, Presiding Judge.

This suit arises out of a collision between a Dodge automobile driven by defendant (appellant) and a Ford owned by plaintiff and driven by one Jackie Holley.

The complaint, in one count, charged simple negligence. Defendant pleaded in short by consent the general issue, with leave to give in evidence any matter which would be admissible if well pleaded.

The cause was tried by the court without a jury. Judgment was rendered for plaintiff.

The sole question presented on appeal is whether the judgment is contrary to the great weight of the evidence.

Mr. Holley testified the accident occurred shortly before 8:00 p. m., on September 27th, on Governor's Drive within the police jurisdiction of Huntsville. Governor's Drive, or highway 20, is a paved four-lane east and west roadway, with two lanes for traffic in both directions. There is a con-

crete divider strip twelve inches high and three feet wide between the east and west lanes. Plaintiff, a Ford dealer at Tuscumbia, purchased five new automobiles from Ray Auto Company in Huntsville and the cars were being driven to Tuscumbia. There were six cars in the convoy. Holley's car was the fifth in line. Holley testified that all the cars had stopped at the last traffic light and as he topped a hill 500 yards from the point of impact he saw an automobile sitting on the right shoulder of the road in front of a house. This car moved onto the highway in the right-hand lane, going in the same direction and in the same lane that Holley was in. Holley said: "I knew I was going to overtake him, so I pulled over into the left lane to pass him. And just as I got even with him or almost even with him, he turned from the right lane into the crossover to the eastbound lane on the same highway. He turned in front of me, in other words my right front fender hit his left fender." Holley stated at the time of the impact his car was in the left lane and defendant was attempting to turn left from the right lane. The right front fender, grill and hood of plaintiff's car was damaged and the damage to defendant's car was at the left front door. The speedometer had not been connected on the new Ford but Holley judged he was driving on an average of 40 miles per hour. Both cars had their headlights on. A fine mist of rain was falling and the highway was wet. Holley did not remember giving any signal of his intention to pass when he moved into the left lane from the right. Holley stated he did not see a dirt road intersecting Governor's Drive, but there is a break in the divider strip and defendant was attempting to turn left into that break from the right lane; that witness had been in the left lane for a distance of about three city blocks when defendant turned in front of him; that he saw no arm signal or mechanical blinker signal given by defendant; that he applied his brakes about the time the cars collided and his car traveled some 20 feet after the impact; that his car did not skid.

Defendant testified he was visiting his brother on Governor's Drive; that when he pulled out of the yard he waited on the shoulder for four or five Ford cars to pass and then moved out into the right lane headed west; that the distance from where he pulled out of his brother's yard to the point of impact is 150 to 175 yards; that he traveled for about 85 yards in the right-hand lane, looked to the rear, saw no car coming, pulled his signal lever down but did not give a hand signal, changed to the left lane and continued to drive in the left lane until Holley hit him; that the driver of the Ford gave no warning signal. At the point of impact a gravel road running from the Madison highway to the Athens highway intersects Governor's Drive and is used as a by-pass by arsenal traffic. There is an opening in the concrete center strip at this point for cars to go through. It was defendant's judgment the Ford automobile was traveling at a rate of sixty miles per hour; that he never saw the Ford until it was within 15 yards of his car; skid marks on the pavement leading to the Ford began 39 steps to the rear of the car. It was 250 yards back to the top of the hill; that after a car topped the hill it could be seen to the point of impact; that the headlights on plaintiff's car were burning; that he first saw plaintiff's car ten yards before the collision; that he did not recall that in the answers to interrogatories propounded by plaintiff he had said, "The distance is hard to judge because the other car was traveling so fast, but I guess it was 50 to 100 feet." He made a statement to Mr. Wade, plaintiff's insurance adjustor, but did not recall that in the signed statement he had said, "I had just started turning left across the left lane when suddenly I saw the headlights of another westbound car in the left inside lane about a car length away. I cut quickly to the right and immediately felt an impact." * * * "I failed to give a left turn arm signal but I think I gave a blinker light signal." The defendant further testified that at the time of impact he was driving 15 to 20 miles per hour preparatory to making a turn and that he did not remember stating

in his answers to interrogatories that his speed was 25 to 30 miles per hour when he first observed the other vehicle and at the point of impact his speed was 5 to 15 miles per hour. The witness further stated that a speed limit sign for automobiles traveling west located east of the point where the accident occurred, read: "40 miles an hour speed limit." The defendant stated he did not apply his brakes from the time he saw the other car until the impact; that he was fixing to turn, saw no traffic coming east, had slowed enough to make the turn and saw no need for an application of the brakes. He was then asked to state whether he had answered "yes" to plaintiff's interrogatory as to whether he had applied his brakes prior to the collision and if his further answer to interrogatories was that his vehicle was traveling approximately 25 miles per hour at the moment the brakes were applied. The witness answered that he applied his brakes to a certain extent, "but as far as mashing them down to stop, I didn't." His car was struck about the left front door and there was no damage to the rear portion of his car.

The defendant's testimony was corroborated by his son Wayne Edger, who was riding with his father at the time of the accident.

Defendant says he does not contend that the testimony showed him to be entirely free from negligence, but insists that the undisputed evidence shows that the plaintiff's driver was guilty of negligence, which contributed proximately to the injury complained of, in failing to comply with the statutory rules of the road in overtaking and passing a vehicle proceeding in the same direction at an intersection of highways, Title 36, Section 13(c), Code 1940; in crossing an intersection of highways, Title 36, Section 58(5), Code 1940; in failing to give audible warning with his horn or warning device before attempting to pass a vehicle proceeding in the same direction, Title 36, Section 12(b), Code 1940; in exceeding the speed limit of 25 miles per hour in a residence district as defined by Title 36, Section 5, Code 1940. Appellant relies principally upon Greer v. Marriott, 27 Ala.App. 108, 167 So. 597, cert. denied, 232 Ala. 194, 167 So. 599, as authority for his contention that the plaintiff cannot recover in this case.

Plaintiff insists that Holley testified there was no intersecting road near where the collision occurred, therefore the evidence is conflicting as to whether the accident happened at an intersection; that the evidence was in dispute as to what the speed limit was at the point where the accident occurred; that the evidence did not establish that the accident occurred in a residential district as defined by the statute.

■ We refrain from detailing the evidence on the question of whether the accident occurred in a residential area as the same is defined by the statute, since it is well settled that whether a certain speed is unlawful is a question for the trier of facts and depends upon the conditions existing at the time and place. Mobile City Lines, Inc. v. Hardy, 264 Ala. 247, 86 So. 2d 393; Ditsch v. Baggett Transportation Co., 258 Ala. 26, 61 So.2d 98.

The plaintiff insists further that the defendant was guilty of negligence in failing to comply with the provisions of Title 36, Sec. 58(9)(a) that "A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made in safety."

In Socier v. Woodard, 264 Ala. 514, 88 So.2d 783, the Supreme Court has said that the drivers of automobiles proceeding in the same direction have reciprocal duties. The driver of the overtaken vehicle is charged with the duty before turning into another lane to ascertain that it is safe to do so; the driver of the overtaking car has the duty of giving audible warning unless in a business district before passing or attempting to pass.

In Winfrey v. Witherspoon's Inc., 260 Ala. 371, 71 So.2d 37, the court said: "It is also a question for the jury of whether section 13, supra [Title 36, Sec. 13(c)] prohibiting a driver from passing another at an intersection, was intended to protect one making a left turn when it was not reasonably safe to do so, inhibited by section 17, supra. Newman v. Lee, 222 Ala. 499, 133 So. 10; Triplett v. Daniel, 255 Ala. 566, 52 So.2d 184."

In Triplett v. Daniel, supra, the court said that if the undisputed proof showed a violation of the statute such violation constitutes negligence as a matter of law but it still remains a question for the jury as to whether such violation of the statute proximately contributed to the injury. The court further pointed out that in the case of Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355, there was testimony tending to show that both the plaintiff and the defendant had violated the statutory rules of the road. The court said: "In that case it was a question for the jury as to whether the plaintiff's violation of the statute proximately contributed to his injuries or whether the defendant's violation of either one or both of two other statutes was the proximate cause of the accident."

We think the case made by the facts differ materially from the case of Greer v. Marriott, supra, relied upon by defendant. We are not willing to say that the plaintiff was guilty of contributory negligence as a matter of law so as to bar his recovery, but hold that the question of whether he was guilty of negligence which proximately contributed to the accident or injury was for the trier of fact under all the evidence. Alabama Power Co. v. Buck, supra.

Where, as here, the evidence is taken orally before the trial judge and such evidence is in sharp conflict, the judgment of the trial judge will not be disturbed on appeal unless it is plainly contrary to the great weight of the testimony. See 2 Ala.

Digest, 1011(1) for citation of numerous cases.

We have carefully reviewed the evidence and we are not willing to say that the trial court's conclusions were palpably wrong.

The judgment of the trial court is affirmed.

Affirmed.